---

## ASHLEY v. LITTLE ROCK.

### Opinion delivered June 18, 1892.

1. *Constitutional law—Jury trial.*

   The constitution secures the right of trial by jury in all cases in which legal rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are recognized and equitable remedies administered.

2. *Specific performance—Parties.*

   In a suit in equity to compel specific performance of a contract for the conveyance of land adverse claimants in possession cannot be made parties unless their claims be in some manner connected with the plaintiff's equity, or with the title of the vendor in the contract.

3. *Jurisdiction of equity—Recovery of land.*

   The equitable owner of land cannot sue an adverse claimant in equity to recover possession, although his remedy at law against such claimant would be barred before the legal title could be procured from the trustee who holds the legal title, where it does not appear that such trustee has refused to allow his name to be used in a suit at law, and no excuse is shown for not having applied to equity for the legal title.

4. *Accounting—Multiplicity of suits.*

   Equity will not assume jurisdiction of a suit to try title and recover possession of land, upon the ground that it is necessary to take an accounting of rents and profits, since a court of law

| 56 | 391 |
| 59 | 191 |
| 56 | 391 |
| 64 | 132 |
| 65 | 505 |

| 56 | 391 |
| 71 | 545 |
| f72 | 259 |

| 56 | 391 |
| e74 | 122 |
| 76 | 553 |

| 56 | 391 |
| 87 | 211 |
| 88 | 612 |

| 55 | 391 |
| 90 | 245 |

is competent to administer that relief; nor upon the ground that there are numerous adverse claimants in possession of different portions of the land.

5. *Equity jurisdiction—Cloud on title—Partition.*

Equity has no jurisdiction of a suit against an adverse claimant in possession of land, to remove a cloud on the title, nor to decree partition thereof.

6. *When equity has jurisdiction to try title.*

It is only where the powers of a court of equity have been called into action by the main purpose of the bill, and where the legal title and possession are incidental only to the relief sought, that a court of equity will try title to land and decree possession.

7. *Practice—Dismissal.*

A dismissal of a complaint as to certain defendants for want of jurisdiction should be without prejudice to bring another action.

8. *Code pleading—Mistake as to relief sought.*

Since public policy forbids disturbance of possession of a railway's track, though acquired without right, a complaint which alleges that a railway company without right took possession of and laid its track upon plaintiff's land and prays for recovery of possession thereof will, under the code procedure, be treated on demurrer as a suit to enforce plaintiff's lien for compensation for the unlawful taking; if the complaint states facts sufficient to constitute a cause of action, it should not be dismissed because plaintiff was mistaken in the relief asked.

9. *Specific performance—Multifariousness.*

A complaint by a vendee against a vendor of land asking for specific performance of a contract to convey an undivided half interest therein is not multifarious in seeking also to enforce a lien for compensation against a railway company which had appropriated a portion of the land without authority, since the enforcement of the lien is specific performance of the contract as to that portion of the land, and the railway company is interested in having all claimants of the land made parties to the suit in order that it may get a clear title when the compensation is settled.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

*Sanders & Watkins* for the Ashley heirs.

Upon the facts stated, a clear case of equitable jurisdiction was made, and the bill was not subject to

the objection of misjoinder of parties or causes of action. Story, Eq. Pl. pp. 271, 284; Pom. Eq. Jur. pp. 243 to 274; 4 Ark. 340; 11 *id.* 720; 20 *id.* 25; 2 How. U. S. 619; 17 N. Y. 592. The relief sought is purely equitable. 14 Ark. 345; 29 *id.* 612; 37 *id.* 286.; 30 *id.* 278; 44 *id.* 436.

*Dodge & Johnson* for the Railway Company and Athletic Association.

The prayer of the bill embraces within its scope seven different objects, viz: specific performance, partition, discovery, removal of clouds, dispossession, account of rents, prevention of multiplicity of suits.

1. In specific performance no one is a proper party who is not or was not a privy to the contract, or who did not hold or acquire under parties to the contract. Pom. on Sp. Perf. sec. 483; Fry on Sp. Perf. p. 79; 3 M. & Cr. 63, 69; 6 Hale, 155; 4 Porter, 374; 15 Ala. 271; 36 N. Y. 561; 8 Wall. 571; 8 Wheat. 290.; 14 Fla. 53; 17 N. J. Eq. 255; 17 N. Y. 125; 20 How. 94; 39 Cal. 294·; 113 U. S. 555; 73 Md. 289; 65 N. C. 34.

2. Partition cannot be made a substitute for ejectment. 47 Ark. 238; 40 *id.* 155; 44 *id.* 338; 59 N.Y. 430; 19 Wend. 367; 5 Den. 385; 2 Paige, 387; 29 Wis. 333; 23 Wall. 466; 17 Atl. Rep. 627; 40 Wis. 579; 16 Fla. 26; 85 N. Y. 434; 84 Ala. 70; 37 Fed. Rep. 273.

3. Bills of discovery abolished. Mansf. Dig. sec. 4921; Sedg. & W. Trial of Title to Land, secs. 168–9, 170–1.

4. Equity cannot relieve against a cloud, unless complainant is in possession, or the land wild, unimproved and unoccupied. 19 Ark. 141; 23 *id.* 761; 24 *id.* 438; 27 *id.* 233, 95, 417, 680, 158; 29 *id.* 616; 30 *id.* 585; 37 *id.* 645; 39 *id.* 202; 43 *id.* 32; 44 *id.* 436; 116 Mass. 558; 86 Ill. 313; 67 Ala. 103; 1 Bibb (Ky.), 67; 110 U. S. 21; 20 Fed. Rep. 339; 11 N. W. Rep. 807; 105 U. S. 189.

5.    Ejectment the only remedy against adverse claimant.    Mansf. Dig. secs. 2624-5-6-7 ; 41 Ark. 466.

6.    Upon recovery in ejectment plaintiff is entitled to rents and profits.    31 Ark. 344.

7.    Multiplicity of suits.    See Pom. Eq. Jur. sec. 251 ; 34 Fed. Rep. 826 ; 5 Johns. 278 ; Dicey on Parties, pp. 508, 515 ; 32 Ark. 305, 508 ; 7 Wendell, 158 ; Sedg. & Wait. Tr. Tit. secs. 239, 240 ; 24 How. 277 ; Mansf. Dig. secs. 2525-6.

8.    The bill is multifarious.    Story, Eq. Pl. 271, 272 ; 96 U. S. 341 ; Barb. Parties in Eq. 493 ; Story, Eq. Pl. sec. 284 *b.;* 1 Dan. Ch. Pl. & Pr. p. 339, c. 6; sec. 4.

9.    Complainants barred by laches.    124 U. S. 188 ; 120 U. S. 387–8 ; 17 Wall. 336 ; 6 S. W. Rep. 449 and notes ; 50 Ark. 141.

*W. L. Terry* and *T. E. Gibbon* for Pulaski County, *Morris M. Cohn* for the City of Little Rock, and *Ratcliffe & Fletcher* for Scruggs, Ennis & Co., cite additional authorities.

*Sanders & Watkins* in reply.

1.    The American doctrine is that all persons interested should be made parties.    Mansf. Dig. secs. 4948 *et seq.:* 37 Ark. 517 ; 33 *id.* 240 ; 11 *id.* 120 ; 3 *id.* 364 ; 116 Mass. 90 ; 4 Minn. 145 ; 11 Mich. 17 ; 9 Iowa, 98 ; 23 Mo. 423 ; 39 Cal. 297 ; 4 Hun, 108; 4 Peters, 202.

2.    Six out of the seven objections made by appellees to the bill are well recognized heads of equity jurisdiction.

3.    A court of equity is the proper forum in which to recover against a railway company for land taken without right.    51 Ark. 258.

4.    The right of a party holding an equitable title to bring ejectment is fully discussed in 36 Ark. 461.

5.    There was no misjoinder.    Story, Eq. Pl. pp. 87, 88, 89 ; Pom. Sp. Perf. p. 545–6 ; Pom. Rem. p. 383 ; Pom. Eq. Jur. secs. 114, 242.

JOHN B. JONES, Sp. J.   Roswell Beebe and Chester
Ashley entered the lands upon which a portion of the
City of Little Rock stands.   The title was placed in the
name of Beebe, under a written contract that he held
one-half in trust for Ashley.   Beebe laid out the lands
into lots and blocks, and divided and conveyed all except
the irregular strip along the river front now in contro-
versy.   This was not laid out or divided, but the title
remained in Beebe at his death.

The heirs of Ashley filed a complaint in equity
against the heirs of Beebe, alleging that they held the
title to one-half the land in trust for them, and refused
to convey; that neither they nor the heirs of Beebe were
in possession; and prayed for specific performance and
for partition.

The City of Little Rock, St. Louis, Iron Mountain
& Southern Ry. Co., Pulaski County, Athletic Associa-
tion, Pulaski Gas Light Co., Charles F. Martin, Scruggs,
Ennis & Co., Neimeyer & Darragh and George H. Meade
were also made defendants.   The complaint alleged that
the City of Little Rock, without right or title, put the
other parties in possession of separate portions of the
land, and that they are in possession under some kind of
written title made by the city.   That defendant railway
company, without right or authority, took possession of
and appropriated a strip of land through the entire tract,
and laid its tracks thereon, and is operating its roads
over it.   Plaintiffs pray that the claims of these defend-
ants be decreed void, as clouds on the title, and that they
be decreed to deliver up possession of the land.

The heirs of Beebe answered, substantially admit-
ting the allegations of the complaint, and made their
answer a cross-complaint.   The City of Little Rock and
others alleged to be in posssession filed separate motions
to dismiss the complaint and cross-complaint for mis-
joinder and for multifariousness, and demurred on the

ground that the complaint did not state facts sufficient to constitute a cause of action.   No judgment was rendered on the demurrer, but the chancellor dismissed the complaint and cross-complaint on the motions.

The complaint stated a good cause of action against the heirs of Beebe.   Were the other defendants properly joined?   Did the complaint state facts sufficient to give a court of equity jurisdiction to try the title under which these defendants claimed possession?

1. Right of jury trial.   A party in possession, claiming title adverse, is entitled to have his claim tried at law by jury.   Sec. 7, art. 2, Constitution 1874; *Govan* v. *Jackson*, 32 Ark. 553. " The distinction between law and equity is constitutional, to the extent to which the 7th amendment forbids any infringement of the right of trial by jury, as fixed by the common law."   The right of trial by jury extends to all cases in which legal rights are to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized and equitable remedies administered.   *Root* v. *Railway Co.* 105 U. S. 189; *Parsons* v. *Bedford*, 3 Pet. 447.

Many States have adopted what is known as the Reformed Procedure, abolishing the distinction between law and equity.   There is much conflict of judicial opinion as to the jurisdiction conferred on courts of equity by such legislation.   Some authorities relied on by counsel are from such States.   A complete amalgamation of law and equity is impossible, so long as the jury trial is retained.   Pomeroy's Equity Jurisprudence, sec. 116. The distinction between the two systems of procedure is expressly preserved by our code.   Mansfield's Digest, secs. 4918, 4919.   The jurisdiction of our courts of equity is practically the same as that of the Federal courts, and the High Court of Chancery of England.   Our code simply abolished forms, and established liberal rights of amending defective pleadings.

Counsel for appellants urge that, the action being 2. Parties to suit for specific performance. for specific performance, all persons claiming an interest in the land should be made parties to it. "In a bill for specific performance, one who claims adversely to the vendor cannot be made a party for the purpose of having his claim settled by decree, so as to be binding on him in relation to his claim of title." *Lange* v. *Jones*, 5 Leigh, 192 ; *Willard* v. *Tayloe*, 8 Wall. 571.

In specific performance, as in other causes of equity jurisdiction, an adverse claimant in possession cannot be made a party, unless his claim be in some manner connected with the plaintiff's equity or with the title of the vendor in the contract. A court of equity has no more power to deprive an adverse claimant in possession of the right of trial by jury in an action for specific performance than in other equitable actions. In each case to which our attention has been called where jurisdiction to try an adverse claim has been sustained, the claim has been under a party to the contract, or in privity with the title of the vendor. The language used in *Seager* v. *Burns*, 4 Minn. 141, approaches nearer the contention of appellants than any other case we have examined. But the facts show the adverse claim there was under a judgment against the vendor. So the case comes within the rule.

It is contended that, appellant's title being equita- 3. When equity has no jurisdiction of suit to recover land. ble, they have no remedy at law, and before they could procure the legal title through a court of equity the statute of limitations will cut off their remedy ; that while they have a present right, it will be lost if they are forced to wait to procure a legal title, and that therefore equity will furnish a remedy. The heirs of Beebe could bring ejectment. It is not alleged they have refused to do so, nor refused to allow their names in such suit. No excuse is shown for delay in applying to a court of equity for the legal title, till the statute of limi-

tations will have run before they can procure a decree.

The plaintiff cannot, for the reason only that his title is equitable, force an adversary claimant into a court of equity, when facts are not stated to connect the adverse claim with plaintiff's equity. The plaintiff cannot deprive the adverse claimant of the right of trial by jury, by neglecting to acquire the legal title. Plaintiff should first acquire the legal title, then a court of law is the proper forum in which to try the right to possession. *Fussell* v. *Gregg*, 113 U. S. 550.

Appellants urge cloud upon title, partition, discovery, multiplicity of suits, confusion of boundaries, and an account of rents and profits, as grounds of equity jurisdiction.

4. As to accounting. · · An account of rents and profits is a legal and not an equitable remedy. Early in the history of this State courts of law were invested with the same powers, in matters of discovery, that existed in courts of equity. *Field* v. *Pope*, 5 Ark. 66.

As to multiplicity of suits. As to multiplicity of suits, a court of equity may restrain, in order to prevent numerous suits, as in nuisance, trespass and trespass involving confusion of boundaries, and like cases, where plaintiff's title is admitted. But if plaintiff's title be disputed, he must in general first have it settled at law, for the reason that courts of equity do not in general try title to lands. Pomeroy's Equity Jurisprudence, sec. 252.

If the main subject of the action be equitable, with various legal questions growing out of it, a court of equity will not turn such legal questions over to a court of law to settle, but, having jurisdiction of the equitable subject of the litigation, to prevent multiplicity of suits, will take jurisdiction of all matters arising out of it. *Richmond* v. *Dubuque & Sioux R. Co.* 33 Iowa, 487 ; *Root* v. *Railway Co.* 105 U. S. *supra.*

It is well settled, a court of equity has no jurisdiction to remove a cloud on title against one in possession claiming adverse title. The same is true of partition. *London* v. *Overby*, 40 Ark. 155.

To give a court of equity power to try title and decree possession of land, the equitable grounds must be such that the title and possession depend on the equitable relief sought, such as specific performance, trust, fraud, accident, mistake and like equitable cases, where the title and possession is merely incidental to and follow the relief to be granted. It is only where the power of the court of equity has been called into action by the main purpose of the bill, and where the legal title and possession is incidental only to the relief sought, that a court of equity will try title to land and decree possession. *Green* v. *Spring*, 43 Ill. 282.

It will be seen that the character of equitable grounds appellants sought to invoke does not fall within the class that empowers a court of equity to try title and decree possession of land. The defendants, City of Little Rock, Pulaski County, Pulaski Gas Light Co., Athletic Association, Charles F. Martin, Scruggs, Ennis & Co., Neimeyer & Darragh and George H. Meade, were not properly joined as defendants. The order dismissing the complaint as to them should have been without prejudice. *Deery* v. *McClintock*, 31 Wis. 202.

The case as to defendant railway company stands on different grounds. When a railway company, without right or authority, takes possession of and appropriates land to its own use, and its tracks laid thereon become a portion of its line of road, public policy forbids the disturbance of the railway's possession. The owner of the land has a lien for the amount of compensation that may be enforced in equity, the same as a vendor's lien. *Organ* v. *Memphis & Little Rock R. Co.* 51 Ark. 235. Assuming the allegations of the complaint to be true, the rail-

way company appropriated the land without right or legal authority. The heirs of Beebe and Ashley are each entitled to one-half the compensation. The railway company has the right to occupy the land, but the legal title is in the Beebe heirs, with a lien for the compensation. The enforcement of this lien is an equitable action. The filing of the complaint in equity must be treated as an election to pursue the equitable remedy. What more facts were necessary to constitute an equitable cause of action for enforcement of the lien for compensation?

The precise nature of this cause of action did not appear from the allegations and prayer of the complaint. It was framed with the object of obtaining a decree for possession—relief that could not be granted. But facts appeared that, under proper allegation, would constitute a cause of action to enforce the lien. What was the legal effect of the defects in the complaint? If the facts set up had been made more certain and definite, so the nature of the action would have appeared, would the railway company have been improperly joined? Under the old system of pleading, the allegations were required to be certain and definite, and the prayer for relief consistent with the case made by the bill. There could be no recovery except on the case made by the bill. Under that system the defects would be fatal to recovery. The main purpose of the code was to relieve parties from the consequences of poor pleading and mistake in form of actions, and to prevent a failure of justice where facts appear sufficient to constitute a cause of action, without regard to the form or mode of allegation. "When the allegations in a pleading are so indefinite and uncertain that the precise nature of the claim is not apparent, the court may require the pleading to be made definite and certain by amendment." Mansfield's Digest, sec. 5082.

The prayer for relief is no part of the statement of facts required to constitute a cause of action ; the entire omission of such a prayer would not be ground of demurrer ; such defect could only be reached by motion. Newman on Pleading and Practice, p. 664.

While, under the old system, the recovery was confined to the case made by the bill, all the code requires is that facts enough appear to constitute a cause of action. If the plaintiff be mistaken in the relief asked, still if the facts show he is entitled to some relief, the complaint cannot be dismissed, but may be amended to conform to the relief justified by the facts.

The complaint was dismissed on the ground of misjoinder of parties. A railway company is a proper party defendant to an action to enforce a lien for compensation for land wrongfully appropriated. The complaint showed appellants and the heirs of Beebe owned the land, and the company wrongfully appropriated it. The company then was a proper party to an action to enforce the lien for compensation.

Whether or not the facts stated in the complaint were sufficient to constitute a cause of action could only be raised by demurrer. The motion to dismiss for misjoinder was improper. The complaint being dismissed on the motion, the court did not reach judgment on the demurrer. The rules of pleading adopted by the code are as binding on the court now as the old system was before the code. The court cannot now visit parties with the penalties of the old rules for indefinite or uncertain pleading ; otherwise the code has failed in its object. The complaint showed a cause of action defectively stated, and on motion should have been made more definite and certain. *Bushey* v. *Reynolds*, 31 Ark. 662.

The company also filed a motion to dismiss on the ground the complaint was multifarious. This was not a proper motion. If multifarious, the motion should

9. When bill for specific performance not multifarious.

have been to strike out the cause or causes of action improperly joined with others. Newman on Pleading and Practice, p. 464; *Dyer* v. *Jacoway*, 42 Ark. 186. The facts, properly stated, would show a single cause of action for compensation. The complaint was for specific performance. The railway company, having appropriated the land, is entitled to it on payment of compensation. The money is all the heirs of Ashley and Beebe can recover from the company. The enforcement of the lien is in fact specific performance of the contract as to that portion of the land. The company is interested in having all persons parties to the suit who claim title, either legal or equitable, in order that it may get a clear title when the compensation is settled. The complaint is not multifarious. *Brown* v. *Guarantee Trust & Safe Deposit Co*. 128 U. S. 403.

The chancellor erred in dismissing the complaint and cross-complaint as to defendant railway company.

Reversed and remanded for further proceedings according to law.