## DUNNIVAN v. HUGHES.

### Opinion delivered June 1, 1908.

1. REFORMATION—ATTACHMENT DEED.—An attachment sale of land can not be reformed for a misdescription in the certificate of purchase of the land intended to be sold if the proceedings upon which the sale was based contained the same misdescription. (Page 446.)

2. SALE OF LAND—BOND FOR TITLE—BREACH.—Where, at the time a vendor of land executed his bond for title, he was without title to or interest in the lot, and the vendee never acquired possession of it, the vendor is liable in damages for a breach of such bond. (Page 446.)

Appeal from Craighead Chancery Court; *Edward D. Robertson*, Judge; reversed.

*Hawthorne & Hawthorne*, for appellant.

The facts do not justify a decree of reformation in this case. 37 Mo. 364; 55 Mo. 500; 37 Ind. 138; 66 Ind. 488; 67 Ind. 164; 68 Am. Dec. 596; 85 Ark. 62.

*F. G. Taylor*, for appellee.

The court was authorized to decree a reformation under the facts in this case. 28 Ark. 372.

BATTLE, J. On the 7th day of July, 1906, M. A. Dunnivan instituted this action against W. J. Hughes in the Craighead Circuit Court, and alleged that he entered into a contract with the defendant on the 11th day of January, 1906, whereby he agreed to purchase the following described real estate in the town of Jonesboro, to-wit: 79 feet off of the west end of lot 6 in block 2 of Flint's Addition to the city of Jonesboro, being 79 feet by 194 55-100 feet, for the sum of $300, of which plaintiff paid the defendant $100 in cash, and executed to him his promissory note for $200, payable six months thereafter; that the defendant at the time of the purchase executed to plaintiff a bond

for title whereby he agreed to convey to plaintiff the aforedescribed property "by a sufficient warranty title," upon payment of the purchase money. That the defendant was not at the time of the execution of the bond, and is not now, and has not been at any time, the owner of said property. The plaintiff is entitled to recover the $300 and $200 damages, the same being the difference in the value of the lot as sold to plaintiff and its market value, "the plaintiff's title to the land sold having wholly and totally failed." And he asked for a judgment for damages.

The defendant answered and admitted that he entered into the contract with plaintiff for the purchase of real estate, and described it, and admitted that it was described in the bond as alleged in the complaint, but averred that it was incorrectly described. That he (defendant) purchased the property at a sheriff's sale under an order of court in an attachment proceeding in the case of M. I. Hughes against J. W. Scott; that on the fifth day of January, 1905, the sheriff levied the writ of attachment in such proceedings upon the lot, and described it as the north half of lot 6 in block 2 of Flint's Addition to the town of Jonesboro, when in fact he actually levied on the lot described in answer, and incorrectly described it in the levy, in the advertisement thereof for sale, and in the certificate of purchase executed to the purchasers. Defendant admits that he sold the lot to plaintiff for $300, the sum of $100 of which was paid in cash, and tendered a deed to plaintiff for the lot sold when he paid the remainder of the purchase money. Defendant asked that the cause be transferred to the Craighead Chancery Court; that the description of the lot in the bond for title and in the proceedings in attachment be corrected to correspond to the facts, and for judgment against the defendant for the unpaid purchase money.

The cause was transferred to the Craighead Chancery Court; and the plaintiff replied to the answer.

"The facts most favorable to the defendant were about as follows: M. I. Hughes instituted an action in the Craighead Circuit Court against J. W. Scott, who appears from the proceedings to have been a non-resident of the State. An attachment was issued and delivered to the sheriff on the 3d day of January, 1905, and levied on the north half of lot six (6) in

block two (2) of Flint's Addition to the city of Jonesboro. The notice was posted on the south half of lot six (6) in said block two (2). A judgment was rendered on constructive service against Scott at the March term, 1907, of the court, and the north half of. lot six (6) in block two (2) of Flint's Addition to the town of Jonesboro was ordered sold for cash.

"The sheriff advertised the lot to sell as described in the judgment. and posted a notice of sale on the south half of lot six. The sheriff, as shown by the certificate of purchase, sold the north half of lot six (6) in block two (2) of Flint's Addition to Jonesboro to W. J. Hughes on the 17th day of April, 1905, for $175.

"No deed has been made to Hughes, and there is nothing to indicate that he paid the purchase money, other than the order of the court directing the sheriff to sell for cash, and it seems the sale was never reported.

"On the 11th day of January, 1906, the defendant sold the north half of lot six in block two of Flint's Addition to Jonesboro to the plaintiff, received $100 cash and two promissory notes for $100 each, payable in six months. The proof shows the lot was vacant, and that the defendant furnished a surveyor who went with the plaintiff to locate the land. When they discovered the bond for title did not cover the land, the plaintiff declared it was the wrong description, and that he would drop the matter.

"The Jonesboro Sand-Cement Brick Company, a corporation of which the plaintiff was president, on the 16th day of March, 1906, purchased the south half of lot six (6) in block two (2) from Basil Baker, who had previously purchased from J. W. Scott. In the meantime, and at the February term of the court, 1906, P. C. Barton and Lyman Hinson, after giving M. I. Hughes, the defendant, Hughes, and plaintiff, Dunnivan, notice, had the judgment directing the sale of the north half of lot six in block two of Flint's Addition to Jonesboro vacated and and set aside. This order was made some 30 days before Baker conveyed to the Jonesboro Sand-Cement Brick Company. The Jonesboro Sand-Cement Brick Company soon after its purchase took possession of the property and constructed a cement house thereon for manufacturing purposes. There was no effort made

on the part of the defendant to perfect his title until the plaintiff instituted this action in July, 1906."

The court ordered and decreed that the attachment proceedings in M. I. Hughes *v.* J. W. Scott in the Craighead Circuit Court for the Jonesboro District, towit: the return on the writ of attachment, the judgment sustaining the attachment, which was rendered at the February, 1905, term of said court, the advertisement of the sale of land levied upon and ordered sold, and the certificate of purchase of property under the sale to the defendant, W. J. Hughes, the purchaser at the sale, and the bond for title executed by the defendant in this cause to the plaintiff, Dunnivan, be reformed so as to correspond with a description the court found to be correct; and rendered judgment in favor of the defendant against the plaintiff for the unpaid purchase money, and ordered the lot sold to satisfy the same if it (judgment) was not paid in thirty days. Plaintiff appealed.

The chancery court was without authority to reform the attachment proceedings. *Tatum* v. *Croom*, 60 Ark. 487; *Landon* v. *Morris*, 75 Ark. 6; and note to *Bartlett* v. *Judd*, 78 Am. Dec. 136, and authorities cited. The appellee at the time he sold to appellant was without title to or interest in the lot, and thereafter remained in that condition. The lot sold was vacant, and appellant never had possession of it. Appellee is liable for damages for a breach of his bond for title (*Bellows* v. *Cheek*, 20 Ark. 424) ; and appellant is entitled to his remedy at law therefor.

The decree of the chancery court is reversed, and the cause is remanded with directions to the court to transfer it to Craighead Circuit Court.